# EXHIBIT 6

CFTC Letter No. 26-19   No-Action   June 12, 2026



**UNITED STATES
COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

Division of Market Oversight

**Re:    No-Action Positions Regarding Removal of Expiration Dates from Existing Digital Commodity Perpetual-Style Futures Contracts**

## I. Introduction

The Division of Market Oversight ("**Division**" or "**DMO**") of the Commodity Futures Trading Commission ("**Commission**" or "**CFTC**") is issuing this letters in response to requests dated June 12, 2026 from Bitnomial Exchange, LLC ("**Bitnomial**")[1] and Coinbase Derivatives, LLC ("**Coinbase**")[2] (collectively the "**Exchanges**"), pursuant to 140.99.[3]

The Request Letters request the Division issue a no-action letter confirming that the Division will not recommend an enforcement action against the Exchanges if the Exchanges remove the expiration dates from the terms and conditions of their existing perpetual-style digital commodity[4] futures contracts (the "**Existing Perpetual-Style Contracts**"), with an immediate effective date upon publication of the amendments, notwithstanding the requirements of Commission Regulations 40.6(a)(3)[5] and 40.6(b)(1).[6]  Further, the Exchanges ask that the Division confirm that it will not recommend that the Commission, or exercise delegated authority from the Commission to, take action to issue a stay of the certification of such amendments to the Contracts pursuant to Commission Regulation 40.6(c)(1).[7]

## II. Background

*a.   Regulatory Treatment of Digital Commodity Perpetual Futures*

---

[1] Bitnomial, Request for No-Action Relief Regarding Removal of Expiration Date from Existing Digital Commodity Futures Contracts, June 12, 2026 ("**Bitnomial Letter**").

[2]  Coinbase, Request for No-Action Relief from CFTC Regulations 40.6(a)(3), 40.6(b)(1), June 12, 2026 ("**Coinbase Letter**") (collectively with the Bitnomial Letter, the "**Request Letters**").

[3] 17 CFR § 140.99.

[4] For purposes of this letter, the term "digital commodity" has the meaning assigned to it in the U.S. Securities and Exchange Commission and CFTC guidance concerning the application of the federal securities laws to certain types of crypto assets and certain transactions involving crypto assets ("**Digital Commodity**").  *See* Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, 91 Fed. Reg. 13714, 13718 (Mar. 23, 2026), *available at: https://www.federalregister.gov/d/2026-05635/p-105*.

[5] 17 C.F.R. § 40.6(a)(3).

[6] 17 C.F.R. § 40.6(b)(1).

[7] 17 C.F.R. § 40.6(c)(1).

1

CFTC Letter No. 26-19   No-Action   June 12, 2026

On May 29, 2026, the Commission issued an order under Regulation 40.3, stating that listing perpetual futures contracts[8] referencing the spot price of bitcoin or other Digital Commodities with "deep, active, and continuous" spot market trading ("**Digital Commodity Perpetual Futures Contracts**") as futures contracts would not violate the Commodity Exchange Act ("**CEA**" or "**Act**") or the Commission's regulations.[9]  The Commission emphasized that its analysis in the Order applies only to perpetual contracts tied to bitcoin and other Digital Commodities and noted that certain features of the asset class underlying these perpetual futures contracts may influence regulatory treatment and compliance matters.[10]

In addition to the Order, the Commission issued a policy statement which stated the Commission's position "that the public interest is best served by requiring perpetual contracts that reference assets that are not contemplated in the Order to undergo Commission review and approval pursuant to Commission Regulation 40.3."[11]

### b.   The Rise of Perpetual-Style Futures Contracts

Due to the regulatory uncertainty concerning the appropriate classification of perpetual futures contracts in the U.S. derivatives markets, the market for perpetual futures contracts largely developed outside of the United States, with the majority of trading occurring on offshore trading venues.

In order to bring perpetual type contracts to the U.S. derivatives markets, the Exchanges listed perpetual-style futures contracts on certain Digital Commodities, *i.e.*, the Existing Perpetual-Style Contracts.  However, unlike true perpetual futures contracts which have no fixed expiration date, these perpetual-style futures had long-dated expiration dates, including up to 25 years.

Despite the differences in expiration dates, as explained in the Request Letters, the fundamental mechanics of the Existing Perpetual-Style Contracts are identical to those of a Digital Commodity Perpetual Futures Contract, including relying on a periodic funding rate mechanism, rather than a fixed expiration date, that is designed to maintain relative price parity with the underlying asset's spot price.[12]

---

[8] For purposes of this letter, 'perpetual futures contracts' or 'perpetual contracts' are derivative contracts that have no fixed expiration date, and which rely on a periodic funding rate mechanism, rather than a fixed expiration date, to maintain relative price parity with the underlying asset's spot price.

[9] In the Matter of the Request for Approval by KalshiEX LLC of the BTCPERP Futures Contract (May 29, 2026), *available at https://www.cftc.gov/filings/documents/2026/orgdcmkexbtxperporder26601.pdf* (the "**Order**").

[10] *Id.* at 7–9.

[11] Policy Statement Concerning the Listing of Perpetual Contracts, 91 FR 33160 at 33161 (June 3, 2026) *available at https://www.federalregister.gov/documents/2026/06/03/2026-11020/policy-statement-concerning-the-listing-of-perpetual-contracts* ("**CFTC Perpetuals Policy Statement**").

[12] Division staff notes that while the funding mechanism may be identical, the pricing of the Existing Perpetual-Style Futures Contracts may deviate due to various factors.

CFTC Letter No. 26-19   No-Action   June 12, 2026

      *c.   Amendments to Contract Terms and Conditions for Contracts with Open Interest*

      As explained above, due to the regulatory uncertainty concerning the appropriate classification of perpetual futures contracts in the U.S. derivatives markets, the Exchanges listed the Existing Perpetual-Style Contracts, instead of true perpetual futures contracts.

      Now that the Commission has affirmatively confirmed the regulatory classification of Digital Commodity Perpetual Futures Contracts as futures contracts, the Exchanges propose to revise the terms and conditions of their Existing Perpetual-Style Contracts to remove the contracts' expiration dates.  These amendments would effectively convert the Existing Perpetual-Style Contracts into Digital Commodity Perpetual Futures Contracts.  Importantly, however, several of these Existing Perpetual-Style Contracts currently have open interest.

      When DCMs seek to amend contract terms and conditions of existing contracts with open interest, particularly material terms and conditions such as the expiration date, there must be meaningful consideration of the potential adverse impacts on the diverse sets of market participants with existing positions in the contract.

      Where open interest exists in a contract,[13] the announcement or implementation of changes to contract terms and conditions can potentially affect prices.  This dynamic may result in some current contract holders experiencing losses, while others benefit, depending on their market position.  Such movements are driven solely by the alteration of contract terms and conditions rather than changes in underlying market fundamentals, introducing the possibility for profits and losses based on these amendments.

      Further, amending the terms and conditions of futures contracts with open interest poses challenges because the outcomes of any change are unpredictable.  While exchanges should apply their expertise to craft effective amendments that avoid adverse impacts, it may be impossible to anticipate how such changes could affect price discovery and hedging in real-world scenarios.

      *d.   Certification of Amendments to Convert Perpetual-Style Contracts into True Perpetual Contracts*

      As discussed above, the Exchanges propose to convert their Existing Perpetual-Style Contracts into Digital Commodity Perpetual Futures Contracts through elimination of the expiration dates for the contracts.

---

[13] Division staff notes that amending the contract terms or conditions of contracts that are either not yet listed or lack open interest generally do not pose the same risks as amending contracts with open interest.  Because no market participants have financial exposure or contractual obligations in such contracts, changes to the contract terms do not adversely affect any existing futures positions.  Upon the implementation of the amended contract terms and conditions, traders can determine whether they want to trade in the contract based on the amended terms and conditions.

CFTC Letter No. 26-19   No-Action   June 12, 2026

To amend the terms and conditions of an existing non-enumerated agriculture futures contract,[14] such as the Existing Perpetual-Style Contracts, DCMs are required to submit a certification of such amendments under Commission Regulation 40.6(a)[15] or submit an approval request under Commission Regulation 40.5.[16]

For amendments of contract terms and conditions that are certified to the Commission under Commission Regulation 40.6(a), the Commission, or the Director of the Division through delegated authority from the Commission, may stay such amendments under Commission Regulation 40.6(c) by issuing a notification informing the DCM that the Commission is staying the certification of the amendments on the grounds that the rule or rule amendment presents novel or complex issues that require additional time to analyze, or the amendment is potentially inconsistent with the CEA or the Commission's regulations thereunder.[17]  The Commission will have an additional 90 days from the date of the notification to conduct the review.[18]  Further, the Commission will provide a 30-day comment period on the stayed amendments.[19]

In the CFTC Perpetuals Policy Statement, the Commission stated "[p]erpetual contracts raise novel and complex questions relating to market structure, customer protection, resilience during periods of market stress, and consistency with the Core Principles applicable to registrants under the CEA."[20]

Further, the Commission stated "given the novel characteristics of perpetual contracts, including their lack of a traditional expiration date and the complex questions concerning, among others, market structure and customer protections, the Commission believes that the public interest is best served by requiring perpetual contracts that reference assets that are not contemplated in the Order to undergo Commission review and approval pursuant to Commission Regulation 40.3."[21]

In addition, the Commission stated its belief "that the Commission Regulation 40.3 process provides important benefits for regulators, market participants, and the public.  Prior review promotes transparency, facilitates engagement between Commission staff and registrants during product development, and provides greater regulatory clarity for market participants and

---

[14] Amendments that materially change a term or condition of a contract for future delivery of an enumerated agricultural commodity as listed in Section 1a(9) of the Act, or an option on such a contract or commodity, in a delivery month having open interest must be submitted to submitted for prior Commission approval under Commission Regulation 40.4.

[15] 17 C.F.R. § 40.6(a).

[16] 17 C.F.R. § 40.5.

[17] 17 C.F.R. § 40.6(c)(1).  Rule or rule amendments may also be stayed if it is accompanied by an inadequate explanation. *Id*.

[18] *Id*.

[19] 17 C.F.R. § 40.6(c)(2).

[20] CFTC Perpetuals Policy Statement at 33161.

[21] *Id*. at 33161-33162.

CFTC Letter No. 26-19   No-Action   June 12, 2026

members of the public seeking to responsibly innovate within the CFTC's regulatory framework."[22]

Consistent with the CFTC Perpetuals Policy Statement, the Division believes that an amendment to the terms and conditions of a perpetual-style futures contract that converts such contract into a true perpetual futures contract likely raises novel and complex issues that require additional time to analyze, particularly for contracts that have open interest.[23]  The Division believes that the Commission Regulation 40.6(c) stay process provides important benefits for the Commission, market participants, and the public.  The extended review process under Commission Regulation 40.6(c), in addition to providing the Commission necessary additional time to analyze the amendments, also promotes transparency, facilitates engagement between Commission staff and registrants as DCMs seek to amend contract terms and conditions, and provides greater regulatory clarity for market participants and members of the public seeking to responsibly innovate within the CFTC's regulatory framework.[24]

Furthermore, for contracts with open interest, the extended review provides further opportunity for market participants to engage with Commission regarding the potential impacts that such contract amendments may have on their open positions, provide time for market participants to orderly exit their positions under the existing terms and conditions of the contract, and for the Commission to evaluate whether the amendments will adversely affect those market participants with open interest in the contract.[25]

As such, the Division believes that as a general matter, certifications of amendments under Commission Regulation 40.6 to remove the expiration dates from perpetual-style futures contracts will be subject to a stay under Commission Regulation 40.6(c).

## III. Requested No-Action Positions

Recognizing these issues, as explained above, the Exchanges request that the Division issue a no-action letter confirming that the Division will not recommend an enforcement action against the Exchanges if the Exchanges remove expiration dates from the terms and conditions of their Existing Perpetual-Style Contracts ("**Proposed Contract Amendments**"), with an immediate effective date upon publication of the amendments, notwithstanding the requirements of Commission Regulations 40.6(a)(3) and 40.6(b)(1).  Further, the Exchanges ask that the Division confirm that it will not recommend that the Commission, or exercise delegated authority from the Commission to, take action to issue a stay of the certification of the Proposed

---

[22] *Id*. at 33162.

[23] For avoidance of doubt, the Division believes that proposing to amend other types of futures contracts other than just perpetual-style futures contracts, including long-dated futures contracts, in order to convert them into true perpetual futures contracts would similarly raise novel and complex issues.

[24] The Division believes that submitting such amendments under Commission Regulation 40.5 would have similar benefits.

[25] *See supra* note 24.

CFTC Letter No. 26-19   No-Action   June 12, 2026

Contract Amendments to the Existing Perpetual-Style Contracts pursuant to Commission Regulation 40.6(c)(1).

Specifically, Coinbase asks for a no-action position from the 10-business-day requirements of Commission Regulations 40.6(a)(3) and 40.6(b)(1), allowing it to expedite implementation of the Proposed Contract Amendments.[26]  Coinbase argues that its request is "narrowly tailored" and aligns with the CEA, relevant Commission regulations, the Order and CFTC Perpetuals Policy Statement, and the CEA's objective to promote "responsible innovation and fair competition."[27]

Further, Coinbase argues that "absent expedited implementation of the amendments to the Contracts via no-action relief, [Coinbase] would be required to await expiration of the 10 business day framework of Commission Regulations 40.6(a)(3) and 40.6(b)(1), which could introduce unnecessary market confusion regarding the [Existing Perpetual-Style Contracts] and work against the CEA's goals of responsible innovation and fair competition."[28]  Coinbase argues further that if it were " [The 10-business day review period] would exacerbate confusion and force unnecessary close-outs, rolls, or liquidity fragmentation…."[29]

Bitnomial Letter states that Bitnomial "has notified all customers of the [Proposed Contract Amendments]. We are unaware of any market participant holding a position who objects to [the Proposed Contract Amendments]."[30]  Further, Bitnomial requests that the no-action letter be "limited to perpetual futures on digital commodities … with the same market characteristics identified by the Commission in the Order."[31]

## IV. No-Action Positions

Based on the foregoing and the representations in the Request Letters, the Division has determined that, subject to the conditions below, conditional no-action positions are warranted. Further, subject to the conditions below, the Division has determined, consistent with the Order and the CFTC Perpetuals Policy Statement, that it will not exercise its delegated authority to, or recommend that the Commission, take action to issue a stay of the certification of the Proposed Contract Amendments to existing Digital Commodity perpetual-style futures, including the Existing Perpetual-Style Contracts, pursuant to Commission Regulation 40.6(c)(1).  Specifically, and subject to the terms and conditions set forth below, the Division will not recommend the Commission initiate an enforcement action against the Exchanges, or against any other DCM, for implementing with immediate effect the Proposed Contract Amendments for their existing

---

[26] Coinbase Letter at 4.
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] Bitnomial Letter at 3
[31] *Id*. at 4.

CFTC Letter No. 26-19   No-Action   June 12, 2026

Digital Commodity perpetual-style futures, including the Existing-Perpetual Style Contracts,[32] resulting in those contracts becoming Digital Commodity Perpetual Futures Contracts, provided that prior to implementing the Proposed Contract Amendments, the DCM:[33]

1.  Will only amend those existing perpetual-style futures contracts that reference Digital Commodities consistent with the Order;

2.  Solicits feedback from its market participants[34] with open positions on any potential adverse impacts the Proposed Contract Amendments may have on their open positions in the existing Digital Commodity perpetual-style futures contracts;

3.  Provides at least five calendar days of notice to its market participants with open positions that it intends to implement the Proposed Contract Amendments for its existing Digital Commodity perpetual-style futures contracts;

4.  Provides an opportunity for market participants to close out open positions under the existing terms of the existing Digital Commodity perpetual-style futures contracts that the DCM is proposing to amend;

5.  Provides appropriate risk disclosures to market participants regarding the risks associated with amendments to contract terms and conditions;

6.  Amends no other material contract terms or conditions other than the expiration date;

7.  Files the Proposed Contract Amendments under Commission Regulation 40.6(a) or Commission Regulation 40.5; and

8.  Notifies the Division of its intention to rely on the no-action positions in this letter and certifies that it has complied with the above conditions.[35]  This notice must specifically identify the existing Digital Commodity perpetual-style futures contracts that the DCM intends to rely on the no-action positions for.

The no-action positions in this letter expire on June 30, 2026.

---

[32] For avoidance of doubt, the no-action positions in this letter are not applicable to any perpetual-style futures contracts that reference assets that are not Digital Commodities.

[33] Some of these conditions regarding the no-action position may constitute a collection of information, as that term is defined in the Paperwork Reduction Act, 44 U.S.C. §§ 3501 et. seq. The Office of Management and Budget ("OMB")—in accordance with 44 U.S.C. § 3507(d) and 5 C.F.R. §§ 1320.8 and 1320.10—has approved collection 3038-0049, entitled "Procedural requirements for requests for interpretative, no-action and exemptive letters," for such purposes. This collection would encompass collections made as part of exemptive or no-action position from the Commission or its staff.  The public is not required to respond to a collection of information that does not have a valid OMB control number.

[34] For avoidance of doubt, the Division would expect impacted customers of an intermediary to be part of "market participants" in the conditions set forth in 2, 3, 4, and 5.

[35] The notice and certification can be contained with its Commission Regulation 40.5 or Commission Regulation 40.6 filing, or in a submission to the dmoletters@cftc.gov.

CFTC Letter No. 26-19    No-Action    June 12, 2026

## IV. Conclusion

This letter, and the positions taken herein, represent the views of the Division only, and do not necessarily represent the positions or views of the Commission or of any other office or division of the Commission.  This letter and the no-action positions taken herein are not binding on the Commission.[36]  Further, this letter, and the positions taken herein, are based upon the facts and circumstances presented to staff of the Division.  Any different, changed or omitted material facts or circumstances might render the positions taken in this letter void.  Except as explicitly provided in this letter, the no-action position taken in this letter does not excuse persons relying on it from compliance with any other applicable requirements contained in the CEA or Commission regulations.  This letter does not impose any obligation on any person, modify or supersede any provision of the CEA or the Commission's regulations thereunder, create any right or benefit enforceable at law or in equity. Each contract submitted to the Commission under part 40 will continue to be evaluated on its own terms.  Finally, as with all staff letters, the Division retains the authority to condition further, modify, suspend, terminate, or otherwise restrict the terms of the positions taken in its discretion.

Questions concerning this no-action letter may be directed to Roger Smith, DMO, at rsmith@cftc.gov.

Sincerely,

_____

Joshua Beale
Acting Director
Division of Market Oversight

---

[36] *See* 17 CFR § 140.99(a)(2) ("A no-action letter binds only the issuing Division . . . and not the Commission or other Commission staff.").