**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHICAGO MERCANTILE EXCHANGE INC.,<br>*Plaintiff,*<br>–v.–<br>MICHAEL S. SELIG, *et al.*,<br>*Defendants.* | Case No. 26-cv-2157 |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCUSE COMPLIANCE WITH LOCAL CIVIL RULE 7(n)

Local Civil Rule 7(n) requires that an agency produce the administrative record in an APA case when the agency files a dispositive motion. Defendants have offered no reason to depart from this requirement. They have not suggested production of the record would be burdensome. Nor could they. The CFTC approved the trading of perpetual contracts as futures—the central issue involved in this case—just *one day* after Kalshi sought the agency's approval. Compl. ¶ 7.

Defendants claim that the Court can resolve their forthcoming motion to dismiss without review of the record. Even if that were true, it provides no basis to withhold the record where Defendants' motion to dismiss is futile and will only delay a decision on the merits. But even taking Defendants at their word on the scope of their forthcoming motion to dismiss, the Court's review will benefit from the record.

Further, Rule 7(n) exists for good reason. In an APA case, the reviewing court often must consider what the agency relied on in reaching its challenged decision. That requires the record. *See, e.g.*, *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 88-89 (D.D.C. 2010). Likewise, production of the record facilitates the efficient disposition of APA cases. *See, e.g.*, *Ovintiv USA, Inc. v. Haaland*, 665 F. Supp. 3d 59, 71 (D.D.C. 2023) ("Summary judgment in such cases is favored."). Here, Plaintiff Chicago Mercantile Exchange Inc. (CME) intends, at a minimum, to promptly file a cross-motion for partial summary judgment on Count One of the Complaint. *See infra*. The required production of the record would allow CME to cross-move on both Complaint counts rather than just one. Withholding the record as Defendants request will require piecemeal motions practice and frustrate the efficient resolution of this entire case. This type of unnecessary delay is especially problematic here. The proper classification of a derivatives product is important, as different derivatives are subject to different rules. And Defendants have already signaled an intention to expand their approval of perpetual futures contracts to a much broader swath of

commodities. Both the agency and market participants need certainty from this Court as soon as possible.

Accordingly, Defendants must produce the record.

## I. Background

This case concerns Defendants' classification of a derivatives contract known as a "perpetual." Defendants unlawfully approved perpetuals for cryptocurrency as futures contracts even though such contracts are swaps—and not futures—under the clear and unambiguous language of the Commodity Exchange Act (CEA). CME challenges that approval, and a related policy statement, under the Administrative Procedure Act. Compl. ¶¶ 1-11. CME challenges Defendants' actions as (1) contrary to law under the APA because they violate the CEA, *id.* ¶¶ 189-202 (Count One); and (2) arbitrary and capricious under the APA (Count Two), *id.* ¶¶ 203-221.

Defendants claim that they intend to move to dismiss the Complaint for lack of standing and because CME is not within the "zone of interests." Based on the purported scope of their motion to dismiss, they have now moved to withhold the administrative record. *See* ECF 25.

## II. Defendants Must Produce the Administrative Record Now.

Nothing counsels against the required production of the record in this case.

Local Civil Rule 7(n) makes clear that Defendants have "an obligation to produce [the record] contemporaneously with the filing of their motion to dismiss." *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 11 n.2 (D.D.C. 2026), *appeal docketed*, No. 26-5086 (D.C. Cir. Mar. 20, 2026). That is no less true when Defendants claim, as here, that their motion "will not rely on materials from the administrative record." ECF 25 at 2. *See, e.g.*, *Sunoco Pipeline, L.P. v. U.S. Dep't of Transp.*, No. 21-cv-1760 (TSC), 2023 WL 11195824, at *5 (D.D.C. Sep. 29, 2023) ("Local Civil Rule 7(n) requires the agency to provide an administrative record to plaintiffs" even if the

dispositive motion does not "rel[y] on an administrative record."); *see also, e.g.*, *Free Speech for People v. Fed. Election Comm'n*, No. 22-cv-666 (CKK) (D.D.C. June 5, 2022) (minute order denying motion to withhold record despite government's argument that its motion to dismiss raised threshold issues that did not require review of the record). Defendants concede that production of the record with a dispositive motion is "[t]he default rule." ECF 25 at 1. Nothing Defendants have cited or argued counsels against applying that default.

Start with the case law invoked by Defendants. Defendants string cite several cases, but each of them involved agency *inaction*, not agency action, as here. ECF 25 at 2; *see, e.g.*, *Sharifymoghaddam v. Blinken*, No. 23-cv-1472 (RCL), 2023 WL 8047007, at *1 (D.D.C. Nov. 17, 2023) ("Because Plaintiffs' suit complains of agency inaction rather than agency action, Defendants are not required to produce an administrative record."). The one case that Defendants cite that does not fit this mold involved a jurisdiction-stripping statute. *A.M.S. v. Edlow*, 826 F. Supp. 3d 153, 171 (D.D.C. 2026). But nothing similar is implicated here.

Defendants also do not claim any burden in producing the record. And here, the administrative decision—the approval of perpetual cryptocurrency futures—occurred the day after the CFTC received the application from Kalshi. To the extent Defendants rely on this abbreviated review period as constituting the entirety of the record, there is no burden in producing that record. If Defendants in fact rely on information before the agency outside that one-day period, including communications with Kalshi, that underscores the need to produce the record promptly.

Defendants also argue that the record will not be necessary because they are raising threshold issues. ECF 25 at 2-3. But that claim does not excuse compliance with Rule 7(n). *See Sunoco Pipeline*, 2023 WL 11195824, at *5; *Free Speech for People*, No. 22-cv-666 (CKK) (D.D.C. June 5, 2022 Minute Order). That is particularly true here, where Defendants'

contemplated motion to dismiss is a thinly veiled effort to delay the merits resolution of this case. The Court should not permit Defendants to avoid production of the record by raising arguments that have no chance of success.

Both of Defendants' arguments are foreclosed by binding precedent. On competitor standing, the Complaint easily pleads that CME faces an unlawful increase in competition as a result of Defendants' actions. *See, e.g.*, Compl. ¶¶ 10, 29, 31-42, 45-46, 61-63 (allegations that Kalshi's perpetual products "are designed to draw away CME's customers who currently trade true … futures" and "compete with CME's retail futures products" and that this competition is new). Indeed, both the CFTC and CME's direct competitor Kalshi have *publicly stated* that the challenged actions are meant to increase competition against incumbents and have even explicitly identified CME as a primary target of that competition. *Id.* ¶¶ 54-59, 63-64. That is more than enough to show standing, full stop. *See Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 226 (D.C. Cir. 2018) ("Because increased competition almost surely injures economic actors, they need not wait until they are competitively hurt before challenging the regulatory ... governmental decision that increases competition." (internal quotation marks omitted)).

A contention that CME is not within the "zone of interests" fares no better. *Food & Drug Admin. v. R.J. Reynolds Vapor Co.*, 606 U.S. 226, 233 (2025) ("zone of interests" test is not "especially demanding"). In fact, it is foreclosed by Supreme Court precedent. Among many other reasons, CME is a "very reasonable candidate[] to seek review of the [agency's] rulings" as a "competitor[] who allege[s] an injury that implicates the policies of the" CEA. *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 403 (1987). After all, a purpose of the CEA is "to promote *responsible innovation* and *fair competition* among boards of trade, other markets and market participants." [7]

U.S.C. § 5(b) (emphases added).[1] CME seeks to do the same here. *See, e.g.*, *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 488 (1998) (competitors' "interest in limiting the markets that federal credit unions can serve is arguably within the zone of interests to be protected by" the statute); *Or. Env't Council v. IRS*, No. 25-cv-4400 (CKK), 2026 WL 1631612, at *18 (D.D.C. June 6, 2026) ("[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test" (quoting *Amgen Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004))).

To the extent the Court looks beyond that binding precedent, the Court's review would benefit from assessing the record in evaluating Defendants' motion to dismiss. The record will almost certainly contain further evidence of CME's competitive injury.[2] *See, e.g.*, *Jordan v. Fed. Bureau of Prisons*, No. 20-cv-1478 (CKK), 2021 WL 4148549, at *1 (D.D.C. Sep. 13, 2021) (denying motion to waive compliance with Rule 7(n) because defendants' "Rule 12(b)(1) argument as to [plaintiff's] lack of standing required the submission of the full administrative record, in order to properly assess the issue"), *vacated and remanded on other grounds*, No. 21-5217, 2024 WL 2932371 (D.C. Cir. June 11, 2024). And the zone of interests question "is a *merits issue*, not a jurisdictional one." *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 586 (D.C. Cir. 2022) (emphasis added); *see Brisk Insurance Services LLC v. Federal Crop*

---

[1] *See also, e.g.*, 7 U.S.C. § 7(d)(9)(A) ("The board of trade shall provide a competitive, open, and efficient market and mechanism for executing transactions that protects the price discovery process of trading in the centralized market of the board of trade.").

[2] For example, Chair Selig has publicly touted the market effects the agency's actions will have. *See, e.g.*, *CFTC Chair Selig Defends Decision to Approve Perps in U.S.*, CNBC: Fast Money, at 00:15-00:52 (June 15, 2026), http://cnbc.com/2026/06/15/cftc-chair-selig-defends-decision-to-approve-perps-in-us.html [https://perma.cc/WLS2-JFJ6] (Chair Selig stating that "incumbents are always going to fear the future" when discussing the CFTC's approval of perpetual contracts).

*Insurance Corp.*, No. 26-cv-842 (SLS), 2026 WL 2185700, at *12 (D.D.C. July 29, 2026) (reviewing the administrative record to evaluate zone of interests question).

Defendants have shown no reason to depart from the default rule that they produce the record now. And even if they did not have to do so now, they inevitably will when their motion to dismiss fails. That means that all Defendants would accomplish through withholding the record is delay.

## III. <u>Producing the Record Now Will Ensure the Efficient Resolution of This Case.</u>

Requiring Defendants to comply with Local Rule 7(n) will also facilitate the disposition of the issues in this case in consolidated fashion through summary-judgment motions—a more efficient process than a drawn-out civil litigation. *See, e.g.*, *Am. Hosp. Ass'n v. Dep't of Health & Hum. Servs.*, No. 18-cv-2112 (JDB), 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018) ("early summary judgment motions are often appropriate" in APA cases); *Zemeka v. Holder*, 963 F. Supp. 2d 22, 26 (D.D.C. 2013) (in an APA case, "the most appropriate course … is to … require Defendants to renew their arguments in a motion for summary judgment with citations to the administrative record"). Any jurisdictional arguments Defendants wish to raise can just as easily "be considered at the summary judgment stage." *Am. Hosp. Ass'n*, 2018 WL 5777397, at *3 n.1. Regardless of how the Court rules on Defendants' motion to withhold the record, CME intends to move for summary judgment on Count One of the Complaint, which presents a question of statutory interpretation—a pure legal issue that does not require the record. The most efficient schedule, however, would allow the parties to brief *both* counts now. CME will propose a briefing schedule for the Court's consideration based on its ruling on Defendants' motion.

Production of the record and summary-judgment practice now will also serve the public interest. The proper classification of perpetual contracts matters. Futures are subject to different regulatory and tax treatment than swaps, with important consequences for market participants and

the CFTC. This Court's decision will provide important direction and clarity as to where perpetuals sit in this regulatory scheme. Moreover, the legal landscape related to perpetual contracts is rapidly evolving. For example, just days after CME filed its Complaint, the CFTC issued a request for public comment on the "listing of perpetual contracts that reference physically delivered or storable energy commodities, such as crude oil." 91 Fed. Reg. 38334, 38334 (June 25, 2026). Similarly, just this week, Kalshi sought CFTC approval to trade two different perpetual "futures" contracts like those at issue in this case—*i.e.*, undated and without an expiration—where the underlying commodities are a stock index and the spot price of copper. *See* Ex. A (Kalshi Aug. 18, 2026 US500 Contract Filing); Ex. B (Kalshi Aug. 18, 2026 COPPERPERP Contract Filing). Kalshi's filings explicitly refer to and engage with the allegations in CME's Complaint in this case. *See* Ex. A at 23-26 ("The BTCPERPs Order and the Policy Statement have recently been challenged in litigation brought by the Chicago Mercantile Exchange Inc. ('CME'), one of the largest incumbent marketplaces for traditional dated futures."). And the CFTC issued a request for comment just two days ago seeking input on whether "perpetual compute futures"—contracts based on "the price of access to computing power" relevant to AI processing—would "have advantages for market participants over 'traditional' or 'fixed date' futures contracts." Ex. C (Aug. 19, 2026 Request for Comment on the Listing of Compute Derivatives Contracts) at 5, 19.

While the CFTC's current approval of perpetual contracts as futures presently applies only to contracts for cryptocurrency—a substantial issue by itself—it now appears that the same reasoning (or lack thereof) that the CFTC applied to cryptocurrency contracts may also extend to a much broader swath of commodities. Resolving now whether the CFTC has acted within its statutory authority and consistent with the APA will thus provide critical guidance to the agency and market participants alike.

For those reasons, the Court should deny Defendants' motion to excuse compliance with Rule 7(n).

Dated: August 21, 2026

Respectfully submitted,

*/s/ Aitan D. Goelman*
Aitan D. Goelman (D.C. Bar No. 446636)
Ivano M. Ventresca (D.C. Bar No. 1045769)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)

ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
agoelman@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiff Chicago Mercantile Exchange Inc.*