**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHICAGO MERCANTILE EXCHANGE INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL S. SELIG, in his official capacity as Chairman of the Commodity Futures Trading Commission; COMMODITY FUTURES TRADING COMMISSION,<br><br>Defendants. | Case No. 1:26-cv-02157 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO EXCUSE COMPLIANCE WITH LOCAL CIVIL RULE 7(n)**

## INTRODUCTION

Defendants move to excuse compliance with Local Civil Rule 7(n) until the Court rules on its forthcoming motion to dismiss and resolves whether CME has standing to pursue its claims in the first place. As Defendants previously noted, the motion will discuss only CME's lack of injury, that this action cannot redress any injury to CME, and that CME's claims are not in the relevant "zone of interests" protected by the Commodity Exchange Act. Mot. 2. Nothing from the administrative record will be cited in Defendants' motion, and nothing from the record will have any bearing on the Court's analysis of that motion. Courts routinely waive compliance from Rule 7(n) under such circumstances. *Infra* § I.A.

CME does not meaningfully dispute this. Instead, CME takes issue with the substance of the motion to dismiss, asserting that the motion is "futile" and that excusing compliance with Rule 7(n) "will only delay a decision on the merits." Opp. 2. Neither is true. For one, CME's competitor-standing allegations are tenuous at best, so if anything, it would be unnecessary and futile to require the compilation of an unnecessary administrative record. *Infra* § I.B. For another, excusing compliance with Rule 7(n) will not delay resolution of the case. If the motion to dismiss is denied, the Commission can then turn over the administrative record, teeing up summary-judgment motions on the merits from both sides. Any "piecemeal" summary-judgment practice would be a problem of CME's own making. Opp. 2; *infra* § I.C. There is no prejudice to CME, and no harm to judicial economy, by excusing Defendants' compliance with Local Rule 7(n) pending the outcome of the motion to dismiss.

## ARGUMENT

### I. Courts in this district routinely excuse compliance with the administrative record to decide motions to dismiss

The caselaw in this District overwhelmingly holds that where a motion to dismiss can be

resolved on threshold issues without regard to the administrative record, compliance with Local Rule 7(n) is excused. *See Sierra Club v. EPA*, 2026 WL 686323, at *4 n.4 (D.D.C. Mar. 11, 2026) ("Because the Court grants Defendants' motion to dismiss for lack of standing, as explained below, the Court grants Defendants' motion for relief; the record is unnecessary for resolving Defendants' dispositive motion."); *A.M.S. v. Edlow*, 826 F. Supp. 3d 153, 164–65 (D.D.C. 2026) (excusing compliance with Rule 7(n) where "[n]othing . . . from the administrative record is necessary to decide the threshold legal questions presented by the [forthcoming] motion to dismiss, including whether this Court has jurisdiction"); *America First Legal Found. v. Bondi*, 2025 WL 2220034, at *4 (D.D.C. Aug. 5, 2025) (excusing compliance because "motion to dismiss raises only threshold questions of law" and "the grounds for [resolving that motion] do not require production of the administrative record"); *Patterson v. Haaland*, 2022 WL 4534685, at *1 (D.D.C. Sept. 28, 2022) (motion to dismiss on "for lack of jurisdiction" "does not require review of the administrative record"); *Akbar v. Cuccinelli*, 2020 WL 1287817, at *4 (D.D.C. Mar. 18, 2020) ("Because plaintiff's case is not ripe—and to conserve scarce agency resources—the Court GRANTS defendants' Motion for Relief from Local Rule 7(n)(1)." (emphasis omitted)); *Connecticut v. United States DOI*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (collecting cases).

CME responds that many of these cases "involved agency *inaction*, not agency action, as here." Opp. 4. But courts waive compliance with Rule 7(n) in cases involving affirmative agency action too. *E.g.*, *Sierra Club*, 2026 WL 686323, at *4 n.4; *Htet v. Trump*, 2025 WL 522033, at *9 (D.D.C. Feb. 18, 2025); *Patterson*, 2022 WL 4534685, at *1. Indeed, CME acknowledges that *A.M.S.* is such a case. Opp. 4.[1] And there is no distinction between agency action and inaction

[1] CME tries to distinguish *A.M.S.* because it "involved a jurisdiction-stripping statute." Opp. 4. That is a distinction without difference; just as the administrative record is unnecessary to determine whether a jurisdiction-stripping statute applies, so too is the record irrelevant to determine whether CME has standing and is within the relevant zone of interests.

cases anyway—Judge Moss, for example, held that Local Civil Rule 7(n) applies even to cases of agency inaction but nonetheless "waive[d] compliance with Local Civil Rule 7(n)" where "the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss." *Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024).

Nor do the three authorities cited by CME support its cause. The first, *Abramowitz v. Lake*, resolved competing motions for summary judgment, not a motion to dismiss. 824 F. Supp. 3d 1, 8 (D.D.C. 2026). The second, *Sunoco Pipeline, L.P. v. U.S. Department of Transportation*, denied a motion to dismiss and explained that, going forward, Defendants would need to comply with Local Civil Rule 7(n) and produce the administrative record since the administrative record would be necessary for "merits review" in that "reverse-FOIA case." 2023 WL 11195824, at *5 (D.D.C. Sept. 29, 2023). That approach makes sense here: Defendants request that this Court first decide the motion to dismiss, and if that motion is denied, require the production of an administrative record. *See Association for Educ. Fin. & Pol'y, Inc. v. McMahon*, 2026 WL 523023, at *11 (D.D.C. Feb. 25, 2026) ("Because the Court resolved much of the motion to dismiss without the Administrative Record contents, the Court will grant the Department's request. Because this case will progress, however, the Government now must provide Plaintiffs with the Administrative Record.").

CME's third authority is a minute order from this Court denying a motion to excuse compliance with the administrative record. Minute Order, *Free Speech for People v. FEC*, No. 1:22-cv-666 (D.D.C. June 5, 2022). It is hard to read much into that order, but it is noteworthy that the agency in that case moved to dismiss on merits grounds, *id.*, Dkt. No. 14 (D.D.C. June 3, 2022), whereas here, Defendants will move to dismiss only on jurisdictional and zone-of-interest grounds. And this Court has elsewhere "grant[ed] the Government's motion to waive compliance

with Local Civil Rule 7(n)[]" "[c]onsistent with other courts in this jurisdiction." *Desai v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1110737, at *5 n.7 (D.D.C. Mar. 22, 2021) (Kollar-Kotelly, J.).

CME also asserts that a motion to excuse compliance with Local Civil Rule 7(n) should be denied if there would be no "burden in producing the record." Opp. 4. But it cites no caselaw to support the notion that a "burden" is required. And in any event, courts recognize that excusing compliance with Local Civil Rule 7(n) "conserve[s] scarce agency resources." *Akbar*, 2020 WL 1287817, at *4.

If precedent is any guide, Defendants' motion to excuse compliance should be granted.

## II. Pre-litigating the motion to dismiss is improper and unnecessary

With caselaw about the issue at hand arrayed squarely against it, CME castigates Defendants' yet-to-be-filed motion to dismiss, asserting that "[b]oth of Defendants' arguments are foreclosed by binding precedent." Opp. 5. It is unclear how CME can make that claim, when it has yet to review Defendants' arguments. Regardless, CME's belief that it will defeat the motion to dismiss has nothing to do with Defendants' motion to excuse compliance with Local Civil Rule 7(n). As explained, the record is not needed to resolve the motion to dismiss, and if the motion is denied, Defendants will at that time produce the administrative record. There is nothing unusual about that chain of events. *See, e.g.*, *McMahon*, 2026 WL 523023, at *11; *Sunoco Pipeline*, 2023 WL 11195824, at *5.

CME's position thus seems to be that Defendants' dismissal arguments are so frivolous as to effectively make the motion a delay tactic. *See* Opp. 7 (arguing that Defendants do not produce administrative record now, "they inevitably will when their motion to dismiss fails," which "means that all Defendants would accomplish through withholding the record is delay"). This reply brief

is no forum to pre-litigate standing, but Defendants' arguments have a significant chance of succeeding. Notwithstanding CME's conclusory allegations of increased competition, it must also plausibly allege that it suffered or will imminently suffer a financial injury—which it cannot do. *See, e.g.*, *PSSI Glob. Servs., L.L.C. v. FCC*, 983 F.3d 1, 11 (D.C. Cir. 2020) ("Moreover, even if the SSOs did directly compete with the LSOs, they made no concrete showing that the Order is likely to cause them a financial injury."); *Mobile Relay Assocs. v. FCC*, 457 F.3d 1, 13–14 (D.C. Cir. 2006) (holding that plaintiffs likely satisfied the "direct and current competitor" prong of competitive injury standing but "failed to make a concrete showing that they are likely to suffer financial injury"). CME also cannot satisfy the "redressability" prong of standing, since the relief CME seeks would not "remove the competing [products] from the market," but would simply require their reclassification from "futures" to "swaps." *Honeywell Int'l Inc. v. EPA*, 374 F.3d 1363, 1369–70 (D.C. Cir. 2004). Nor does the zone of interests that the CEA was designed to safeguard—the protection of markets and market participants—encompass the interests that CME seeks to vindicate in this case—stifling alleged competition among derivatives exchanges. *See* 7 U.S.C. § 5; *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1329 (11th Cir. 2002).

CME vaguely suggests that the administrative record will support its position on both standing and zone of interests. Opp. 6–7. It declares that "the record will almost certainly contain further evidence of CME's competitive injury," without explaining how that could possibly be the case. After all, CME operates the markets that it generically alleges have been or will be harmed by the Commission's actions, and it therefore necessarily has all the data it needs to allege (if it can) specific facts to support its claims. And although the zone-of-interests question "is a *merits issue*, not a jurisdictional one," Opp. 6, that is of no consequence here, because the administrative record will not be needed to resolve that merits issue. *A.M.S.*, 826 F. Supp. 3d at 163–64 (excusing

compliance with administrative record while court considered motion to dismiss "on both jurisdictional and substantive grounds").

## III. CME's efficiency concerns are misguided

CME also argues that forcing Defendants to comply with Rule 7(n) now will result in "a more efficient process." Opp. 7. But it is CME that seeks to introduce inefficiencies.

Defendants propose a logical and standard progression of events. The Court should first resolve the motion to dismiss without the administrative record. If the motion is granted, the administrative record was never needed. If the motion is denied, Defendants can answer the complaint, seek any discovery needed to factually verify CME's standing, and produce the administrative record. At that point, the parties can file cross-motions for summary judgment on Counts One and Two, allowing the Court to fully resolve the case.

CME's proposal is illogical. Before the Court decides whether the allegations in the complaint permit it to exercise jurisdiction, before Defendants answer those allegations, and before Defendants have any opportunity to seek factual confirmation of standing, CME intends to file a summary-judgment motion asking the Court to grant judgment in its favor. Opp. 7. And it seeks to put the Court in a bind by moving for summary judgment on Count One "[r]egardless of how the Court rules on Defendants' motion to withhold the record." *Id.* To aid its untimely rush to summary judgment, CME urges the Court to compel production of the administrative record now.

There is no basis for early summary judgment, and hence, no basis to rush the administrative record. The Court cannot even consider the merits—let alone grant *final judgment*—until it assures itself of CME's standing. *Department of Education v. Brown*, 600 U.S. 551, 560–61 (2023). So the Court must resolve Defendants' motion to dismiss before it can

consider summary judgment. It would be a waste of party and judicial resources to dedicate substantial attention to the merits, which are complex, before that threshold issue is decided.

Even if the Court were to agree that standing has been established at the *pleadings stage*, it would still be inappropriate to simultaneously entertain *summary judgment*. In the latter context, CME must factually establish standing—that is, CME must prove with evidence that it is actually injured by the Commission's Order allowing any DCM (including CME) to list perpetual futures as "futures" rather than as "swaps," and that a court order will redress that injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations [of standing], but must set forth by affidavit or other evidence specific facts." (citation modified)). Discovery may be needed to resolve that issue, in which case the Court will lack an adequate evidentiary basis to decide an early summary-judgment motion. Indeed, if Defendants conclude that discovery is needed to confirm CME's standing, a Rule 56(d) motion may be required, further convoluting the proceedings. *E.g.*, *Mississippi v. Becerra*, 727 F. Supp. 3d 559, 588 (S.D. Miss. 2024). Alternatively, CME's motion for summary judgment may require Defendants to cross-move for summary judgment. On CME's plan for this case, that could result in a dizzying array of motions before the Court at one time.

None of this makes sense. The administrative record is not needed to resolve the motion to dismiss, and CME cannot wield a nonsensical threat of summary judgment as a basis to rush the administrative record.

## CONCLUSION

The Court should excuse Defendants' obligations under Local Civil Rule 7(n) until the forthcoming motion to dismiss is resolved.

Dated: August 26, 2026

Respectfully Submitted,

*/s/ Henry J. Dickman*
Henry J. Dickman (DC Bar No. 1724459)

*Attorneys for Defendants*

TYLER S. BADGLEY
General Counsel
M. JORDAN MINOT
Deputy General Counsel
HENRY J. DICKMAN
Senior Assistant General Counsel
ANDREW WEISBERG
Senior Assistant General Counsel
ANNE W. STUKES
Senior Assistant General Counsel
CARLIN METZGER
Senior Assistant General Counsel
MARGARET P. AISENBREY
Senior Assistant General Counsel

U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Tel: (202) 209-1087
Fax: (202) 418-5567
tbadgley@cftc.gov
jminot@cftc.gov
hdickman@cftc.gov
aweisberg@cftc.gov
astukes@cftc.gov
cmetzger@cftc.gov
maisenbrey@cftc.gov

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, I filed the foregoing reply brief on the Court's CM/ECF system, which will serve all registered counsel of records for parties who have appeared in this action.

*/s/ Henry J. Dickman*
Henry J. Dickman
Senior Assistant General Counsel
U.S. Commodities Futures Trading Commission