**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHICAGO MERCANTILE EXCHANGE INC.,<br><br>*Plaintiff,*<br><br>–v.–<br><br>MICHAEL S. SELIG, *et al.*,<br><br>*Defendants.* | Case No. 26-cv-2157 |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY

Rather than litigate this case on the merits, Defendants try to put up another roadblock. They take the unprecedented position that Rule 26 governs discovery in an APA case and allows the government to discover proprietary information about a regulated party in an attempt to *disprove* competitor standing. The government does not cite *a single case* in this Circuit—or anywhere—that has permitted this kind of "Rule 26" discovery in an APA case.

The consequences of this argument are nothing short of absurd. If Defendants were right—that the "ordinary" Rule 26 standards govern discovery here—then the moment any APA complaint is filed, the parties are free to serve Rule 26 discovery, including interrogatories, requests for production, and deposition notices. Under this unprecedented position, government agencies would need to answer interrogatories—and officials could be sitting for depositions—before they even need to respond to the complaint. It is unsurprising that there is no support for Defendants' position.

Courts in this Circuit are clear: Rule 26 simply *does not apply* in the standard fashion in the APA context. Instead, should Defendants require discovery at the summary-judgment stage, they can move pursuant to Rule 56(d)—the exact procedure Defendants invoked in prior briefing before this Court. Seeking discovery now (which is not permitted regardless) is plainly premature before this Court has reviewed the parties' motion-to-dismiss and summary-judgment briefing.

If all of this were not reason enough to summarily deny Defendants' misguided motion, their requested discovery fails even under the "ordinary" principles of Rule 26. Defendants' position rests on misreadings of competitor-standing law and Article III injury more generally. CME's forthcoming opposition to Defendants' motion to dismiss will demonstrate that each of Defendants' competitor-standing arguments is foreclosed by binding D.C. Circuit precedent that Defendants ignore. Most obviously, Defendants' contention that CME must prove "financial

injury" has been rejected time and time again. All that CME needs to show is an increase in competition. But even worse, Defendants seek extensive discovery into CME's *post-filing circumstances*. Yet standing is assessed at the time of the filing of the Complaint—not after. Though CME must support its standing with facts at the summary-judgment stage, that does not give Defendants a right to engage in an extra-record fishing expedition into events taking place months after CME filed this lawsuit.

For any of the above reasons, this Court should deny Defendants' motion for leave to take discovery.

## I. In an APA Case, Standard Rule 26 Discovery Is Not Available.

Defendants *do not cite a single case* allowing, in an APA action, the "Rule 26" discovery they seek. In particular, they have not cited any APA case allowing a government regulator to wield Rule 26 to obtain sensitive business information from a party it regulates—all under the guise of disproving standing. The absence of support is unsurprising for at least two reasons.

*First*, it is black-letter law that "discovery is unavailable in APA cases, except in two circumstances: (1) where the party seeking discovery makes a strong showing of bad faith or improper behavior; or (2) in the rare case in which the record is so bare as to frustrate judicial review." *Urb. Sustainability Directors Network v. U.S. Dep't of Agric.*, No. 25-cv-1775 (BAH), 2025 WL 2374528, at *40 (D.D.C. Aug. 14, 2025) (citation modified). CME is not aware of *any* APA cases where a defendant was allowed to take discovery of a plaintiff in an attempt to disprove competitor standing. CME asked Defendants for any contrary authority, and they did not provide any.[1]

[1] While a plaintiff may be entitled to jurisdictional discovery, Defendants do not claim they are seeking jurisdictional discovery here. Instead, they purport to take "ordinary discovery" under Rule 26 "on facts relevant to jurisdiction." Defs.' Mot. at 1 n.1.

Defendants proclaim that the restrictions on APA discovery apply only when a plaintiff seeks discovery from an agency in an APA case. Defs.' Mot. at 4; *but see id.* (contending that "what is sauce for the goose is normally sauce for the gander"). That assertion rests on nothing but Defendants' say-so. For support, Defendants cite *Scenic America, Inc. v. United States Department of Transportation*, 836 F.3d 42 (D.C. Cir. 2016). But that case makes the undisputed point that a plaintiff must meet its burden to show standing at "*each* phase" of a litigation; *i.e.*, that a plaintiff must support its standing with facts at the summary-judgment stage. *Id.* at 48-49. It says nothing about discovery (the word does not appear in the decision). And Defendants' evident position that they are entitled to take discovery of CME when it is CME's burden to prove its standing makes little sense. If CME moves for summary judgment without proving its standing, Defendants can simply point out that CME has not met its burden.

*Second*, while Defendants' motion is heavy on cases concerning Rule 26 discovery, the standards for Rule 26 discovery do not govern APA cases. The APA's "limit on discovery … stands in stark contrast to the Court's broad discretion to order discovery under Federal Rule of Civil Procedure 26 in non-APA cases." *Univ. of Cal. Student Ass'n v. McMahon*, No. 25-cv-354 (RDM), 2025 WL 1906548, at *2 (D.D.C. Mar. 18, 2025); *see also Off. of Foreign Assets Control v. Voices in the Wilderness*, 382 F. Supp. 2d 54, 63 (D.D.C. 2005) ("[T]he Court's review is appropriately limited, as is customary, to the administrative record and additional materials which the Court has ordered the Agency to produce."). Defendants claim that because they had to produce the administrative record, as required by the local rules, they somehow have a right to take discovery now. Defs.' Mot. at 4. If that were true, surely Defendants would have caselaw support. But they have none.

Defendants ask this Court to be the first to open the doors to Rule 26 discovery in APA actions. Such a holding would wreak havoc in these types of cases. Because administrative-record cases are exempt from initial disclosures and scheduling conferences, Defendants' position would necessarily mean that every APA plaintiff could, upon filing the complaint, serve deposition notices, interrogatories, requests for production, and requests for admission upon the government—even if only to prove standing.[2] The government would then have to respond to written discovery within 30 days—a month sooner than the government's responsive pleading would be due—and potentially sit for depositions before filing a responsive pleading. There is a reason why no court has adopted the position Defendants assert here.

In short, Defendants have not cited to a single APA case supporting their ability to take invasive "Rule 26" discovery in an effort to disprove CME's competitor standing. That is because such discovery is not available. For this reason alone, this Court should deny their motion.

## II. <u>Defendants' Motion Is Premature and Does Not Comply with Rule 56(d).</u>

Just weeks ago, while the parties briefed Defendants' attempt to withhold the administrative record, Defendants represented to the Court that if they needed discovery to test CME's standing on summary judgment, "a Rule 56(d) motion may be required." ECF 28 at 7. Now, with no explanation, Defendants have abandoned that position and argue that they can freely take Rule 26 discovery at any time in an APA case (which they cannot do, *see supra*).

But Defendants were right the first time. Assuming Defendants could, in theory, make a showing that they need jurisdictional discovery, they would need to follow Rule 56(d) by moving in opposition to CME's summary-judgment motion and "show[ing] by affidavit or declaration that,

---

[2] *See Awan v. U.S. Dep't of Just.*, No. 10-cv-1100 (BAH), 2011 WL 2836555, at *1 (D.D.C. July 13, 2011) (in cases exempted from initial disclosures and Rule 26(f), "there is no prohibition on the immediate availability of discovery upon the commencement of the case").

for specified reasons, [they] cannot present facts essential to justify [their] opposition." Fed. R. Civ. P. 56(d).

Unlike Defendants' novel Rule 26 argument, the Rule 56(d) position is supported by precedent. Judge Moss followed this procedure just months ago in *Amica Center for Immigrant Rights v. Executive Office for Immigration Review*, No. 26-cv-696 (RDM), 2026 WL 662323 (D.D.C. Mar. 2, 2026). There, the government asserted it "might want to seek 'jurisdictional discovery on Plaintiffs' assertions as to their organizational standing.'" *Id.* at *1. But neither the government nor the court could identify *any prior instance* where the government sought such jurisdictional discovery. *Id.* at *2. Rather than let the government prematurely take jurisdictional discovery, Judge Moss directed the government to "raise that need in its opposition to the motion for summary judgment" as required by Rule 56(d). *Id.*

Judge Bates invoked the same procedure in *Shelby County v. Holder* under the predecessor rule to Rule 56(d). 270 F.R.D. 16, 18 (D.D.C. 2010). To take standing-related discovery of the plaintiff, the government had to show, under Rule 56 and in opposition to the plaintiff's summary-judgment motion, why it "need[ed] discovery to assess [plaintiff]'s standing." *Id.* Because the government "offered no reason to doubt the veracity" of the standing declaration offered by the plaintiff, it failed to meet its burden to take such discovery. *Id.* Here, Defendants have not yet seen the evidence that CME will put forward to demonstrate its standing and cannot articulate any basis for why they need discovery now.[3]

---

[3] The government recently tried a similar discovery gambit in the District of Massachusetts. But that court held that the government's premature requests "raise[d] substantial concerns about abuse of the discovery process." *Nat'l Parks Conservation Ass'n v. Dep't of the Interior*, No. 26-cv-10877, ECF 73 (D. Mass. Sept. 15, 2026). The court instead held that defendants could "raise specific evidentiary challenges in their summary judgment briefing, including by seeking relief under Fed. R. Civ. P. 56(d)," but "[a]ny such requests under Rule 56(d) must be limited to

In particular, no discovery is necessary because CME will easily satisfy its evidentiary burden to show an increase in competition. The evidence will include *Defendants' own statements* concerning the unlawful increase in competition caused by their actions. As just a flavor of such evidence, the very day CME filed this lawsuit, a CFTC spokesperson declared: "Rather than compete in the marketplace, the CME has decided to undertake lawfare against the agency and the Trump administration's pro-innovation agenda" and that "[i]ncumbents fear the future and having to compete on a level playing field." Ryan Knappenberger, *CFTC Faces Suit over Approving Kalshi Bid to List 'Perpetual' Futures Contracts*, Courthouse News Serv. (June 18, 2026), https://perma.cc/6BST-M6WP. The administrative record further shows that Kalshi repeatedly argued to the CFTC that "[r]egulating the Perpetual Contracts as [f]utures [c]ontracts [w]ould … *[p]romote [c]ompetition*." AR99 (emphasis added); *accord* AR109. And even Defendants' own amicus announced, the day CME filed, that CME "runs about 92% of U.S. exchange-traded derivatives" but approval of perpetual futures would mean "[m]ore competition among exchanges." Hyperliquid Pol'y Ctr. (@HyperliquidPC), X (June 18, 2026), https://perma.cc/8CL2-7MS5. Those statements alone demonstrate the common-sense point—CME, as a derivatives exchange listing futures contracts, has standing to challenge a "novel" decision classifying, as futures, perpetual cryptocurrency derivatives with no expiration date. *See* AR11.

## III. Defendants' Proposed Discovery Is Irrelevant, Not Proportional to the Needs of the Case, and Would Be Unduly Burdensome.

Defendants spend much of their motion arguing under an incorrect standard. They contend that their yet-to-be-unveiled discovery requests are relevant, proportional, and not unduly

---

jurisdictional facts about which Defendants have a specific, evidentiary basis for questioning their accuracy." *Id.*

burdensome. Defs.' Mot. at 2. But those arguments are irrelevant, because the question is whether discovery is appropriate in the first place, not whether Defendants' future discovery requests are valid. *See Tarquinii v. Del Toro*, No. 21-cv-1567, 2023 WL 2424618, at *2 (D.D.C. Mar. 9, 2023) (applying discovery standards "[w]here a party seeks to compel a response to a discovery request") (cited in Defs.' Mot. at 2).

But even if the Court were to review the motion under Defendants' standard, it would still fail. The discovery Defendants seek—which they describe as "tailored" but actually consists of interrogatories, requests for production, and requests for admission across eight broad categories of information including "facts, data, and analysis," Defs.' Mot. at 5-6—is entirely irrelevant to CME's standing, is disproportional on its face, and would be unduly burdensome.

Defendants propose to take discovery into whether CME has suffered a "financial injury" and CME's future plans related to perpetual contracts. *Id.* But half of that discovery is irrelevant because CME is not required to show financial injury to have competitor standing. The other half is irrelevant because it concerns post-filing circumstances, when standing is assessed at the time of the filing of the complaint. There is no basis for jurisdictional discovery where a court can "not see what facts additional discovery could produce that would affect [its] jurisdictional analysis." *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021).

The vast majority of Defendants' requests for discovery are irrelevant because they rest on a blatant misreading of competitor-standing law, as CME will demonstrate in its forthcoming opposition to Defendants' motion to dismiss. Put simply, where a plaintiff shows an increase in competition, it does not need to show financial injury. *See Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 341 (D.C. Cir. 2018) ("[t]he injury claimed is exposure to increased competition … not lost jobs, per se"); *Sherley v. Sebelius*, 776 F. Supp. 2d 1, 12 (D.D.C.

2011) (rejecting the argument "that plaintiffs must show not only an increase in competition but also specific injuries caused by that increased competition in order to satisfy the injury in fact requirement"), *aff'd*, 689 F.3d 776 (D.C. Cir. 2012). The administrative record confirms that the approval of these contracts would "promote competition." *See supra*. Statements from Defendants also show that the approval of perpetual contracts will increase competition against CME. *Id.* Nothing more is needed.

In fact, each argument from Defendants' motion to dismiss concerning competitor standing—for example, that CME's injury is self-inflicted or that it must show that third parties will stop using CME's dated futures, ECF 30-1 at 13, 17—is expressly foreclosed by D.C. Circuit precedent that Defendants do not mention. *See, e.g., Shays v. Fed. Election Comm'n,* 414 F.3d 76, 89 (D.C. Cir. 2005) (rejecting argument that competitors' injury was self-inflicted because they could have engaged in the same challenged conduct "because being put to the choice of either violating [the law] or suffering disadvantage … is itself a predicament the statute spares them, [and] having to make that choice constitutes Article III injury"). Defendants' relevancy arguments rest on standing arguments that have been rejected time and time again in this Circuit.

Defendants' remaining relevancy contentions fail because Defendants seek information concerning facts and circumstances post-dating the filing of the Complaint. For example, Defendants repeatedly cite to statements made by CME's CEO in an earnings call in July 2026 and CME data and trading volume from last month. Defs.' Mot. at 5-6. Setting to the side that Defendants misrepresent Mr. Duffy's statements,[4] standing is assessed at the time of the

---

[4] As CME will explain in its opposition to Defendants' motion to dismiss, Mr. Duffy's statements explicitly concern *institutional investors*, not retail trading. The Complaint could not be clearer: the competitive harm in this case relates to retail trading.

complaint—not months after the fact. *See, e.g.*, *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) ("[S]tanding is assessed at the time of filing."). Events in July and August 2026 do not concern standing. And of course, even if CME saw higher trading volume on certain products, Defs.' Mot. at 6 n.3, that does not show that such activity would not have been higher absent Defendants' unlawful actions. Defendants' contentions, as CME will discuss in its opposition, rest on rank speculation and counterfactuals that CME is not required to disprove to show standing.

Because Defendants' requests are irrelevant, they are necessarily not proportional to the needs of this APA case and would be unduly burdensome. *See, e.g.*, *Sanchez v. Target Corp.*, No. 19-cv-03186 (APM), 2020 WL 13610771, at *1 (D.D.C. July 27, 2020) (irrelevancy of the request" directly undercuts proportionality). While they claim that their requests are "tailored," it is telling that they have not included the actual requests.[5] Defendants do not offer any limits on the number of interrogatories, requests for production, or requests for admission they intend to serve. There can be no mistake that serving up to 25 interrogatories, unlimited requests for production, and unlimited requests for admission—on matters that do not require any discovery—would be disproportional to the needs of this APA case. And requiring CME to potentially produce highly sensitive business information—including information concerning its *future* business strategy—to its regulator is unduly burdensome. That is all the more so because the administrative record reveals that the CFTC and Kalshi—one of CME's direct competitors—have worked together hand in hand on the process for getting perpetual contracts approved as futures, and in the eight months since Chair Selig's appointment, the CFTC has filed a host of briefs in district courts and appellate courts in support of Kalshi's sports gambling business, including taking the unprecedented step of

[5] CME reserves all rights, including objecting to the individual requests, in the event the Court grants any discovery.

suing nine different states for their efforts to regulate gambling in their territory. In fact—apart from the two agency actions challenged here—the *only* documents in the administrative record are from Kalshi or its related entities.

Defendants' attempt to take discovery here is nothing more than a fishing expedition for irrelevant information that does not go to testing CME's standing. Even under Defendants' own misguided view of discovery in an APA case, the Court should deny Defendants' motion.

## IV. **If the Court Grants Defendants' Motion, Then CME Is Entitled to Jurisdictional Discovery.**

This Court should not permit Defendants' unprecedented detour into Rule 26. But if the Court were inclined to allow such discovery, then CME would be entitled to discovery of Defendants and third parties, including, but not limited to, Kalshi and its related entities. Defendants, Kalshi, and even the CFTC's amicus have all made direct statements about how the Defendants' actions in this case increase competition. Discovery into any documents and communications concerning those entities' analyses, assessments, or evaluations of the impact of the Defendants' approval of perpetual contracts on competition would be relevant (if the Court adopted Defendants' arguments in their motion). Such discovery would include communications between Defendants and Kalshi and others relating to how classifying perpetuals as futures would affect competition. It would include any analyses from Defendants, Kalshi, and others evaluating (1) why companies, like Kalshi, have not previously listed perpetuals as swaps; (2) the benefits, including the tax benefits, to companies like Kalshi and others of listing perpetuals as futures as opposed to swaps; and (3) any impact on derivative exchanges like CME of Defendants' actions. As Defendants repeat, "what is sauce for the goose is normally sauce for the gander."

## CONCLUSION

For any of the above reasons, this Court should deny Defendants' motion.

Dated: September 18, 2026

Respectfully submitted,

*/s/ Aitan D. Goelman*

Aitan D. Goelman (D.C. Bar No. 446636)
Ivano M. Ventresca (D.C. Bar No. 1045769)
Brian J. Beaton, Jr. (D.C. Bar No. 90020963)

ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
agoelman@zuckerman.com
iventresca@zuckerman.com
bbeaton@zuckerman.com

*Attorneys for Plaintiff Chicago Mercantile Exchange Inc.*