**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHICAGO MERCANTILE EXCHANGE INC.,

Plaintiff,

v.

MICHAEL S. SELIG, in his official capacity as Chairman of the Commodity Futures Trading Commission; COMMODITY FUTURES TRADING COMMISSION,

Defendants.

Case No. 1:26-cv-02157-CKK

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY ON FACTS RELATING TO CME'S ALLEGED <u>COMPETITIVE INJURY STANDING</u>**

CME believes it is "absurd" for there to be discovery over whether it is injured and can invoke the Court's subject-matter jurisdiction. Opp. 1. But CME admits that discovery could prove necessary after it moves for summary judgment, Opp. 4–5, and it even previews its own desire to obtain discovery from nonparty Kalshi and an *amicus curiae*, Opp. 10. The Court should reject this vacillation and grant leave for Defendants to conduct limited discovery related to standing.

At the outset, CME is wrong that the sky will fall if the government can obtain discovery about a plaintiff's standing in an APA case. Opp. 1. CME simply misunderstands the law on discovery in APA suits. There is generally no discovery in APA suits because the court's *merits* review is based only on the administrative record that was before the defendant agency when it made the challenged decision. *American Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001). But it does not follow, as CME would have it, that discovery is categorically barred as to *non-merits* issues like standing. *See, e.g., Texas v. Biden*, No. 2:21-cv-067, 2021 WL 4552547, at *2 (N.D. Tex. July 19, 2021) (the rule that judicial review in APA suits is limited to the administrative record "does not apply to non-merit issues such as standing" … "because courts consider it 'not in order to supplement the administrative record on the merits, but rather to determine [their own] jurisdiction'"). Indeed, "[c]ourts routinely rely on extra-[administrative] record evidence to support standing in APA cases." *Id.*; *see, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (citing declarations in addressing standing in APA case); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (same).

Accordingly, courts in this District and others have permitted discovery on the plaintiff's standing in APA cases. *See, e.g.*, *Texas v. DHS*, 756 F. Supp. 3d 310, 331–32 (E.D. Tex. 2024) (court allowed federal agency to conduct expedited discovery on standing in APA case); *Public Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 145 (D.D.C. 2019) (Moss, J.) (court allowed discovery

on standing between government's motion to dismiss being denied and plaintiffs' second motion for summary judgment); *Texas v. DHS*, No. 6:23-cv-00007, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) (allowing "extra-record discovery related to standing" by all parties because "[i]n APA cases, courts routinely rely on extra-record evidence on the issue of whether the plaintiff has the requisite standing"). Discovery on standing may be unusual in APA cases, but CME has brought an unusual lawsuit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) ("[W]hen however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed.").

The consequences of allowing discovery into CME's standing are hardly revolutionary. For one, as the foregoing demonstrates, this Court would *not* be "the first to open the doors to Rule 26 discovery in APA actions." Opp. 4. And CME's wild conjecture that "government agencies would need to answer interrogatories" or "sit[] for depositions" "before they even need to respond to the complaint" is simply not true. Opp. 1. Again, taking discovery from the plaintiff about non-merits issues does not undermine the black-letter principle that merits discovery from the government in APA cases is limited to the administrative record. And if a plaintiff believed it needed discovery from the government to substantiate its standing in an APA case, it would need to obtain leave from the Court first—just as Defendants are seeking here.

Next, CME claims that Defendants can only obtain discovery on standing by filing a Rule 56(d) motion. This argument comes as a surprise. When negotiating a briefing schedule, the parties agreed that Defendants would seek the Court's leave to conduct discovery precisely to *avoid* resort to Rule 56(d) motions practice, which could further delay proceedings. *See* Dkt. No. 41 at 1 n.1 ("[W]hen negotiating a proposed schedule, Defendants agreed to move for leave to serve discovery on CME in order to facilitate the efficient resolution of the case and to avoid downstream discovery

disputes or Fed. R. Civ. P. 56(d) motions."); Dkt. No. 28 at 7 (warning that "a Rule 56(d) motion" could "further convolut[e] the proceedings"). And the parties' schedule builds in several months before the deadline for summary-judgment motions so that any discovery could occur now rather than later. Dkt. No. 33. CME's proposal—to kick the discovery can until *after* it has moved for summary judgment—thus invites the inefficiencies that this motion and the entire briefing schedule were designed to avoid. And it is particularly ironic given CME's past protestations against "piecemeal motions practice" that would "frustrate the efficient resolution of this entire case." Dkt. No. 27 at 2. That said, to the extent that the Court believes that Rule 56(d) is the proper vehicle for obtaining discovery on standing, Defendants reserve all rights to file a Rule 56(d) motion. *See* Opp. 4 ("Defendants were right the first time. Assuming Defendants could, in theory, make a showing that they need jurisdictional discovery, they would need to follow Rule 56(d) by moving in opposition to CME's summary-judgment motion….").

The handful of cases denying standing-related discovery to the government are not to the contrary. In all these cases, the courts held that the government had not identified any particular need for discovery as to the plaintiff's standing. *Amica Ctr. for Immigrant Rts. v. Executive Off. for Immigr. Rev.*, No. 26-cv-696 (RDM), 2026 WL 662323, at *2 (D.D.C. Mar. 2, 2026) (holding that the government had not "even attempt[ed] to identify a possible dispute that discovery might help resolve"); *Shelby Cnty. v. Holder*, 270 F.R.D. 16, 18 (D.D.C. 2010) (Bates, J.) ("The government has not shown that it needs discovery to assess Shelby County's standing."); *National Parks Conservation Ass'n v. Department of the Interior*, No. 26-cv-10877, ECF 73 (D. Mass. Sept. 15, 2026) (holding that government's discovery requests were overbroad). This case could not be more opposite. As laid out in Defendants' motion to dismiss, CME's own publicly available data and statements raise substantial doubt that it has suffered any kind of injury in fact, and there is no

factual basis to show that a judgment in CME's favor would remedy its alleged injury. Dkt. No. 30-1 at 11–21. CME disagrees, but that disagreement is precisely why discovery is essential: to allow the airing of facts that confirm or deny whether there is any justiciable controversy.

The parties agree on one thing: the Court can grant leave to conduct discovery without pre-evaluating the relevance and proportionality of Defendants' discovery requests. Opp. 7. CME nonetheless previews its inevitable relevance and proportionality objections, which are unavailing. Opp. 7–8. Defendants' requests about CME's "financial injury" are plainly relevant to competitor standing—indeed, it is CME's burden to prove precisely that. *PSSI Glob. Servs., L.L.C. v. FCC*, 983 F.3d 1, 11 (D.C. Cir. 2020) ("[A] party asserting competitor standing must 'make a concrete showing that it is in fact likely to suffer financial injury as a result of the challenged action.'"). Defendants are willing to disavow discovery on CME's financial injury if CME is willing to concede that it has suffered no such injury, but if it seeks to create a factual dispute on that point, then discovery is plainly relevant and proportional. CME also claims that "facts and circumstances" that "post-dat[e] the filing of the Complaint" are not relevant because "standing is assessed at the time of the complaint—not months after the fact." Opp. 8–9. But if the facts show that CME was not injured in the aftermath of the challenged agency conduct, it necessarily did not face an "actual or imminent" competitive harm when it filed suit. *Air Excursions LLC v. Yellen*, 66 F.4th 272, 279 (D.C. Cir. 2023).

Any discovery would also be limited and proportional. Defendants would seek information related to CME's injury through August 2026, just a couple of months after the complaint was filed. Nor would Defendants make "unlimited" requests. Opp. 9. Defendants anticipate serving only about 20 interrogatories, 20 requests for production, and 15 requests for admission. These narrow requests are proportional to the needs of the case and would not unduly burden CME.

In a final, lone paragraph, CME claims that if Defendants can seek discovery about CME's standing, that necessarily means that CME can seek discovery from Defendants and non-parties. Opp. 10. This tit-for-tat threat is not backed by any actual need for discovery. *NBC-USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 60 (D.D.C. 2010) (Kollar-Kotelly, J.) ("Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, it is inappropriate to subject defendants to the burden and expense of discovery." (citation modified)). CME has not previously asked for discovery and insists that it "will easily satisfy its evidentiary burden to show an increase in competition." Opp. 6. It also has the administrative record, which contains "communications between Defendants and Kalshi" regarding perpetual futures. Opp. 10. So CME's post-hoc discovery demand lacks any legitimate basis.

**CONCLUSION**

CME freely admits that "Defendants have not yet seen the evidence that CME will put forward to demonstrate its standing." Opp. 5. Instead of providing that and other relevant information in the two months prior to summary-judgment motions, CME seeks to drag out the process and ultimately delay the resolution of this case. Defendants seek to avoid wasting time and ask for leave to serve narrowly tailored discovery requests on standing so that the parties can file complete cross-motions for summary judgment and opposition briefs within the already-set time limits. The Court should allow Defendants to conduct limited discovery related to CME's standing.

Dated: September 23, 2026

Respectfully Submitted,

*/s/ M. Jordan Minot*
M. Jordan Minot (DC Bar No. 1722554)

TYLER S. BADGLEY
General Counsel
M. JORDAN MINOT
Deputy General Counsel
ANDREW WEISBERG
Senior Assistant General Counsel
HENRY J. DICKMAN
Senior Assistant General Counsel
ANNE W. STUKES
Senior Assistant General Counsel
CARLIN METZGER
Senior Assistant General Counsel
MARGARET P. AISENBREY
Senior Assistant General Counsel

U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
Tel: (202) 209-1087
Fax: (202) 418-5567
tbadgley@cftc.gov
jminot@cftc.gov
aweisberg@cftc.gov
hdickman@cftc.gov
astukes@cftc.gov
cmetzger@cftc.gov
maisenbrey@cftc.gov

*Attorneys for Defendants*